**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| GEORGE KONDOS and | § | |
| RUBY ANN KONDOS, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:03-CV-1440 |
| | § | |
| ALLSTATE TEXAS LLOYDS and | § | |
| ROBERT SOLBERG, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendants Allstate Texas Lloyds ("Allstate") and Robert

Solberg's ("Solberg") (collectively "Defendants") Motion for Summary Judgment (#24).

Defendants seek summary judgment on Plaintiffs George Kondos ("Mr. Kondos") and Ruby Ann

Kondos's ("Mrs. Kondos") (collectively "the Kondoses") claims for breach of contract, violations

of the Texas Deceptive Trade Practices Act ("DTPA"), violations of the Texas Insurance Code,

breach of the duty of good faith and fair dealing, negligence, gross negligence, and fraud.  Having

reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law,

the court is of the opinion that summary judgment should be granted in part and denied in part.

I.      Background

In 2001, the Kondoses purchased Homeowner's Insurance Policy Number 21684721701/16

("the Policy") from Allstate, providing coverage on their former residence located in Lumberton,

Texas.  The Kondoses renewed the policy annually through the time of their claimed losses until

the sale of the house in mid-2003.  During the policy period at issue, the dwelling was insured for

$84,000.00, although appraised for $79,930.00, other structures were insured for $8,400.00, and

the contents, including electronic equipment, were insured for $66,400.00.  On August 17, 2001, the Kondoses filed a claim on the Policy for losses sustained as a result of alleged water damage and ensuing mold damage.  The Kondoses' claim encompassed damages to the dwelling, contents, and other structures covered under the Policy.

Upon receiving the Kondoses' claim, Allstate retained Health & Safety Management, Inc. ("Health & Safety"), to inspect the home and prepare a mold assessment and remediation report. On September 14, 2001, Health & Safety inspected the house and produced an Indoor Air Quality Survey and Remediation Plan, which detailed the findings on the condition of the residence.  After the Kondoses raised concerns about the thoroughness of the report, Allstate opened an additional claim file and requested Health & Safety to perform another inspection of the premises, which resulted in an addendum to the report.  Health & Safety's second inspection included taking eight air samples, one wall cavity sample, and three different samples to ascertain qualitatively and quantitatively the type of mold, if any, present in the structure.

The amended report stated that the source of the mold contamination was a plumbing leak in the master bathroom wall adjacent to the closet and the HVAC (heating, ventilation, and air conditioning) drain in the air return in a bedroom closet.  The report also noted evidence of water intrusion in the HVAC return.  Mold was visibly detected on the wall in the master bathroom, on the closet wall in the master bedroom, and on the closet wall in another bedroom.  Air testing revealed several different types of mold.  Health & Safety recommended that the mold in the house be remediated to conform with the Environmental Protection Agency's guidelines entitled *Mold Remediation in Schools and Commercial Buildings*.  Furthermore, Health & Safety advised the Kondoses to evacuate the residence during the remediation.

2

On January 18, 2002, McKee Environmental Health, Inc. ("McKee"), a firm retained by the Kondoses through their attorney, performed an additional home inspection for mold.  McKee's test concluded, as did Health & Safety's, that mold existed in many areas of the house.  McKee recommended substantially similar steps for remediation of the mold in the residence.

On November 7, 2001, Beaumont Remediation Specialties, Inc. ("Beaumont Remediation"), submitted an estimate on the costs to remediate the mold, rebuild the structure, and repair or replace the Kondoses' personal property.  On December 26, 2001, Shane's Steamatic ("Shane's") provided remediation estimates to Allstate based on Health & Safety's reports.  The next day, Coastal Industrial Services, Inc. ("Coastal Industrial"), presented a bid for remediation, which included the cost to repair the structure of the house and those contents that did not have to be destroyed.  Finally, on March 22, 2002, A-1 Restoration ("A-1") submitted a bid for remediation, contents, and buildback costs.

Allstate accepted Shane's bid, maintaining that the other contractors' bids did not conform to Health & Safety's remediation protocol.  Mr. Kondos contacted Shane's to commence remediation, but he was informed that Shane's could not begin the remediation for several months because of its busy schedule.  Rather than wait for Shane's to start the remediation process, Mr. Kondos performed the repairs himself.  Mr. Kondos took eight to nine months to complete the remediation of the residence.

Allstate issued two checks to the Kondoses totaling $8,827.71 for remediation of the structure of the residence.  Additionally, Allstate paid the Kondoses $4,836.73 for personal property remediation expenditures, $4,699.95 for buildback costs, $4,100.00 for two months of alternative living expenses ("ALE"), and $5,313.53 for the replacement of carpet.  Ultimately,

after completing investigations of both of the Kondoses' claims and considering the different bids, Allstate paid $27,777.92 in an attempt to satisfy the Kondoses' insurance claims.

In November 2002, after the home was remediated, McKee performed a supplemental inspection to determine whether the conditions at the Kondoses' residence had improved since the first inspection.  The supplemental inspection report reflected that only two areas in the house required further remediation—the PVC drain pipe and the blades from the ceiling fan in a bedroom.  Following the completion of the remediation and buildback repairs, the Kondoses sold the house for $105,000.00.

The Kondoses allege that Allstate breached the Policy by not paying a sufficient sum to remediate their home properly, to replace or repair the damaged contents, and to cover the ALE they incurred during the repair period.  On November 12, 2003, the Kondoses filed their original petition in state court in Hardin County, Texas, asserting claims for breach of the insurance contract, breach of the duty of good faith and fair dealing, violations of the DTPA and the Texas Insurance Code, negligence, gross negligence, and fraud.  Additionally, the Kondoses seek recovery of exemplary damages and attorneys' fees.  Following the removal of the case to federal court, Allstate filed the instant motion seeking summary judgment on all the Kondoses' claims.

II.     Analysis

        A.     Summary Judgment

        Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The

4

parties seeking summary judgment bear the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002); *Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir. 1999).

"A fact is '*material*' if it '*might affect* the outcome of the suit under governing law.'" *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original) (quoting *Anderson*, 477 U.S. at 248); *see Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001); *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999); *Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489 (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Harken Exploration Co.*, 261 F.3d at 471; *Merritt-Campbell, Inc.*, 164 F.3d at 961. The moving parties, however, need not negate the elements of the nonmovants' case. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving parties may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322-23;

*Anderson*, 477 U.S. at 257; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999), *cert. denied*, 528 U.S. 1160 (2000); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.  "[T]he court must review the record 'taken as a whole.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587).  All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes."  *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996); *see Reeves*, 530 U.S. at 150; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *Harken Exploration Co.*, 261 F.3d at 471; *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.), *cert. denied*, 534 U.S. 951 (2001); *Colson*, 174 F.3d at 506.  The evidence of the nonmovants is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in their favor.  *See Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n.5 (1990) (citing *Anderson*, 477 U.S. at 255); *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003); *Martinez*, 338 F.3d at 411; *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir.), *cert. denied*, 540 U.S. 815 (2003); *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002); *Harken Exploration Co.*, 261 F.3d at 471.  The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts."  *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999); *accord Little*, 37 F.3d at 1075 (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Furthermore, "'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.'"  *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n.14

6

(1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2d Cir. 1989)).  "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468-69. The nonmovants' burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little*, 37 F.3d at 1075; *see Anderson*, 477 U.S. at 247-48; *Wallace*, 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994)).  "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown*, 337 F.3d at 541; *see Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002).

Summary judgment is mandated if the nonmovants fail to make a showing sufficient to establish the existence of an element essential to their case on which they bear the burden of proof at trial. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *Wenner v. Texas Lottery Comm'n*, 123 F.3d 321, 324 (5th Cir. 1997), *cert. denied*, 523 U.S. 1073 (1998).  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

B.   Abandonment of Claims

In their response to Allstate's motion for summary judgment, the Kondoses do not address their common law causes of action for negligence, gross negligence, or fraud and appear to have

abandoned them.  Allstate seeks summary judgment "on all Plaintiffs' extra-contractual liability claims arising under . . . common law."  In their response, the Kondoses limit the scope of this dispute to whether "1) Plaintiffs' claims were timely paid by [Allstate]; 2) breach of contract; and 3) breach of the duty of good faith and fair dealing."  Indeed, because they did not brief these claims in their responsive brief, any claims by the Kondoses relying on the common law theories of negligence, gross negligence, or fraud have been waived and are no longer at issue.  *See Bursztajn v. United States*, 367 F.3d 485, 491 (5th Cir. 2004); *Scales v. Slater*, 181 F.3d 703, 709 n.5 (5th Cir. 1999); *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993); *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991); *see also Davis v. Cannon*, 91 Fed. Appx. 327, 329 (5th Cir. 2004).  Therefore, these claims are subject to dismissal.

C.    Breach of Insurance Contract

The Kondoses allege that Allstate breached the insurance contract by "not paying the amounts necessary to properly perform the remediation process . . . ."  In their summary judgment motion, Allstate contends that the Kondoses' breach of contract claim fails because they have not produced evidence to demonstrate damages suffered as a result of Allstate's alleged failure to pay their homeowner's insurance claims promptly and properly.

It is well recognized that "[i]nsurance policies are contracts."  *Harken Exploration Co.*, 261 F.3d at 471 n.3 (citing *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1095 (5th Cir. 1995)); *see Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987).  As with other contracts, a federal court, sitting in diversity in Texas, applies Texas law in the interpretation of insurance policies.  *See Harken Exploration Co.*, 261 F.3d at 471 n.3 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938)); *H.E. Butt Grocery Co. v. National Union Fire Ins. Co.*, 150 F.3d

8

526, 529 (5th Cir. 1998); *see also Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). Under Texas law, the interpretation of insurance policies is governed by the same rules that apply to the interpretation of other contracts. *See Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003); *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 713 (5th Cir. 2002); *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 537 (5th Cir. 2002); *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000); *Balandran v. Safeco Ins. Co.*, 972 S.W.2d 738, 740-41 (Tex. 1998); *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex. 1997). Moreover, "'[t]he interpretation of an insurance policy is a question of law.'" *Centrum GS Ltd.*, 283 F.3d at 713 (quoting *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996)); *see Performance Autoplex II Ltd.*, 322 F.3d at 853.

When construing the provisions of a policy, the insurance contract is considered as a whole, with each part to be given effect, in order to ascertain the true intent of the parties. *See Utica Nat'l Ins. Co. v. American Indem. Co.*, 141 S.W.3d 198, 201 (Tex. 2004); *Balandran*, 972 S.W.2d at 741; *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994); *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 180 (Tex. 1965). Hence, "every sentence, clause, and word" in an insurance policy must be given meaning, "to avoid rendering any portion inoperative." *Balandran*, 972 S.W.2d at 741. Specific provisions in the policy control over general statements of coverage. *See Forbau*, 876 S.W.2d at 133; *see also* 3 ARTHUR L. CORBIN, CORBIN ON CONTRACTS §§ 545-54 (1960). Similarly, "[e]ndorsements control over conflicting general policy language." *Westchester Fire Ins. v. Heddington Ins. Ltd.*, 883 F. Supp. 158, 165 (S.D. Tex. 1995), *aff'd*, 84 F.3d 432 (5th Cir. 1996) (citing *Mutual Life Ins. Co. v. Daddy$ Money, Inc.*, 646

S.W.2d 255, 259 (Tex. App.—Dallas 1982, writ ref'd n.r.e.)).   The terms used in an insurance contract are given their ordinary and generally accepted meaning, unless the policy shows the words were meant in a technical or different sense.   *See Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir. 1996); *Security Mut. Cas. Co. v. Johnson*, 584 S.W.2d 703, 704 (Tex. 1979); *Tri County Serv. Co. v. Nationwide Mut. Ins. Co.*, 873 S.W.2d 719, 721 (Tex. App.—San Antonio 1993, writ denied).

"Under Texas law, the elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."   *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003); *accord Bridgmon*, 325 F.3d at 577 (quoting *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000, no pet.)); *Alcan Aluminum Corp. v. BASF Corp.*, 133 F. Supp. 2d 482, 491 (N.D. Tex.), *aff'd*, 51 Fed. Appx. 482 (5th Cir. 2002); *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).   A breach occurs when a party fails or refuses to perform an act that it has expressly promised to perform.   *See Franconia Assocs. v. United States*, 536 U.S. 129, 142-43 (2002); *Dorsett*, 106 S.W.3d at 716; *Townewest Homeowners Ass'n, Inc. v. Warner Communication Inc.*, 826 S.W.2d 638, 640 (Tex. App.—Houston [14th Dist.] 1992, no writ); *Methodist Hosps. of Dallas v. Corporate Communicators, Inc.*, 806 S.W.2d 879, 882 (Tex. App.—Dallas 1991, writ denied).   Hence, in an action alleging breach of an insurance contract, the plaintiff must establish not only coverage but also that the contract was breached, that the insured was damaged by the breach, and the amount of damages resulting from the breach.   *See*

*Block v. Employers Cas. Co.*, 723 S.W.2d 173, 178 (Tex. App.—San Antonio 1986), *aff'd*, 744 S.W.2d 940 (Tex. 1988).

To succeed on a breach of contract claim, the plaintiff must prove that he suffered damages as a result of the breach. *See MacIntire v. Armed Forces Benefit Ass'n*, 27 S.W.3d 85, 92 (Tex. App.—San Antonio 2000, no pet.); *Southwell v. University of Incarnate Word*, 974 S.W.2d 351, 354-55 (Tex. App.—San Antonio 1998, pet. denied). To recover damages, the plaintiff must establish that the breach of the contract caused him some pecuniary loss. *See Adams v. H&H Meat Prods., Inc.*, 41 S.W.3d 762, 779 (Tex. App.—Corpus Christi 2001, no pet.); *Prudential Secs., Inc. v. Haugland*, 973 S.W.2d 394, 396 (Tex. App.—El Paso 1998, pet. denied). "The evidence must show that the damages are the natural, probable, and foreseeable consequence of the defendant's conduct." *Adams*, 41 S.W.3d at 779 (citing *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex. 1981); *Winograd v. Clear Lake City Water Auth.*, 811 S.W.2d 147, 156 (Tex. App.—Houston [1st Dist.] 1991, writ denied)). The absence of a causal connection between the alleged breach and the alleged damages precludes recovery. *See Adams*, 41 S.W.3d at 779 (citing *Prudential Secs., Inc.*, 973 S.W.2d at 397).

1.    <u>Structural and Contents Remediation</u>

The Kondoses filed their initial claim for water damage to their home on August 17, 2001. In response, Allstate hired Health & Safety to inspect the residence and prepare a mold assessment and remediation report of the purported damage to the house. Subsequently, Shane's submitted a bid for remediation in the amount of $8,827.71, consisting of $7,925.99 to repair the structure of the residence and $901.72 to repair or replace the contents. Based on the estimates provided by Shane's, Allstate issued the Kondoses two checks totaling $8,827.71 for structural and contents

11

remediation.  Allstate maintains that it based its payment on Shane's bid because it was the only bid received that conformed with Health & Safety's remediation protocol.

The Kondoses complain that $8,827.71 was inadequate to repair their home properly and that Allstate should not have based its payments for structural and contents remediation on Shane's bid.  The Kondoses point to several bids they submitted to Allstate, other than Shane's, for structural and contents remediation, which they claim were adequate to repair their home.  Each bid estimated that the cost to remediate the structure and contents was approximately twice that of Shane's bid.  The Kondoses proffered Beaumont Remediation's bid, which estimated the cost to remediate the structure properly to be $16,155.89 and the contents to be $18,044.30.  Coastal Industrial also submitted a bid, which estimated the cost to remediate the structure and contents, excluding that which required destruction, to be $16,000.85.  Coastal Industrial's bid did not include the cost to remediate any of the Kondoses' clothing or any buildback expenses.  Coastal Industrial also required that it be paid 50% of its fees up-front.  Finally, A-1's bid estimated the cost to remediate the structure to be $16,939.09 and the contents to be $4,572.75.

Moreover, Mr. Kondos allegedly advised Allstate's claim adjuster, John Young ("Young"), that he did not want Shane's to prepare a bid for the job because of its purportedly poor reputation in the community.  At deposition, Mr. Kondos testified that "Shane['s] Steamatic has a bad reputation.  Shane['s] Steamatic has done shoddy work for friends of mine.  Shane['s] Steamatic has a reputation of tearing the house apart until they [get] all the insurance company's money."  Additionally, Mr. Kondos alleges that Shane's did not perform a proper inspection of the residence in order to assess the extent of remediation necessary for the structure and the contents of the home.  Mr. Kondos elaborated:

[Robert Shane] came out to the house.  He sat down at my kitchen table for approximately two and a half hours, he and my wife, talking about people they knew jointly.  At the end of the conversation, he said, "Well, I better go."

I said, "You don't want to look at the house?"

He said, "I don't need to look at the house.  I have Health & Safety Management's report."

* * * *

He said, "I'm going to send a copy of my bid to my home office . . . ."  "They will get with the Allstate adjusters and see if they can trim costs somewhere."  He said, "Then they will send the bid back to me.  I will change the bid to suit what they want, and then I will submit the bid to Allstate."

Moreover, Mr. Kondos was under the impression that Allstate's payment of $8,827.71, based on Shane's bid, was to cover only the structural remediation and not the contents.  He testified that the $8,827.71 was for "remediation only."  He stated, "When I was talking to Robert Shane, he told me that contents, he was not going to fool with cleaning the contents.  That was between me and Allstate."  Mr. Kondos added that when he contacted Shane's to establish a date to begin the remediation work he was told that, because of its busy schedule, Shane's would not be able to undertake the project for six to nine months.  According to Mr. Kondos, rather than wait for Shane's and allow the mold damage to continue in the interim, he completed the repairs himself.

The Kondoses also provided Allstate estimates for the cost to repair or replace their damaged personal property.  They offered Alamo Cleaners' estimate for their dry cleaning expenses, which assessed the cost to remediate their clothing at $4,836.73.  Allstate issued the Kondoses a check for $4,836.73, the total amount of Alamo Cleaners' estimate.  The Kondoses claim that, other than paying for the dry cleaning, Allstate did not pay for personal property items that could not be remediated, such as fabric recliners, sofas, loveseats, chairs, and mattresses.  As

13

evidence of the outstanding personal property damages, the Kondoses attached to their response to the summary judgment motion estimates from Well's Furniture and Ethan Allen.  The Well's Furniture estimate, dated January 12, 2002, included a recliner for $829.95, L-Swiv (kit for recliner) for $59.95, sofa for $1,089.95, loveseat for $1,029.95, chair for $779.95, another chair for $1,299.95, and fabric protection for all of the furniture for $399.00.  The Ethan Allen estimate, dated January 11, 2002, contained a queen size mattress for $2,159.00 and a full size mattress for $1,349.00.

        2.    Buildback

Allstate contends that its payment to the Kondoses for buildback expenses was sufficient.  It maintains that the Kondoses never submitted buildback estimates that complied with Health & Safety's mold remediation protocol.  Additionally, Allstate claims that it learned for the first time, on November 13, 2002, two years after the initial claim was made, that Mr. Kondos undertook and completed the remediation repairs himself.  Furthermore, Allstate alleges that Mr. Kondos incurred only between $1,000.00 and $1,500.00 in expenses to perform the repairs.  Nevertheless, on November 13, 2002, Allstate sent its own adjuster to the residence, and subsequently, it issued a check to the Kondoses for $4,699.95 to cover buildback expenditures.

The Kondoses argue that, as with the structural and contents remediation, Allstate's payment of $4,699.95 was inadequate to rebuild their home properly after the mold remediation was completed.  The Kondoses claim that they provided multiple buildback estimates to Allstate, all of which exceeded Allstate's adjuster's estimate and the actual payment they ultimately received.  For example, Beaumont Remediation estimated that it would cost $19,402.55 to rebuild the residence, and A-1 estimated the buildback cost to be $6,648.98.  The Kondoses maintain that

14

the actual cost to rebuild the home was between $5,000.00 and $7,500.00, plus the cost to replace

the carpet.   The Kondoses submitted an invoice in the amount of $5,313.53, from Jones

Decorating Center, Jones Abbey Carpet, to replace the carpet in the home, which Allstate paid.

3.    Alternative Living Expenses

Allstate argues that its payment of $4,100.00 satisfies its contractual obligation to the

Kondoses for ALE and that it is not responsible for any additional ALE they allegedly incurred.

The Policy, EXTENSIONS OF COVERAGE Section 2. LOSS OF USE states:

> LOSS OF USE.  If a loss caused by a Peril Insured Against under Section 1 makes
> the **residence premises** wholly or partially untenable we cover:
>
> > a.    additional living expenses, meaning any necessary and reasonable
> > increase in living expense you incur so that your household can
> > maintain its normal standard of living.
>
> * * * *
>
> The total limit of liability for all loss of use is 20% of the Coverage A (Dwelling)
> limit of liability.  This is additional insurance and does not reduce the Coverage A
> (Dwelling) limit of liability.  The deductible clause does not apply to loss of use
> coverage.
>
> Payment will be for the reasonable time required to repair or replace the damaged
> property.  If you permanently relocate, payment will be for the reasonable time
> required for your household to become settled.

Based on the clear policy language, the maximum amount of ALE for which Allstate is potentially

liable is 20% of $84,000.00 (or $16,800.00), the limit of liability for Coverage A (Dwelling).

Allstate based its ALE payment on Shane's estimate that the remediation would take

approximately one month.  Allstate added an additional month of ALE to cover the buildback

period.  Allstate now claims that two months is "the reasonable time required to repair or replace

the damaged property."  Further, Allstate argues that it is not responsible for additional ALE

15

incurred because it took the Kondoses longer to remediate the home on their own without the assistance of a professional contractor.

The Kondoses respond by arguing that Allstate is responsible for all the ALE they incurred as a result of living away from the home during the remediation period.  Mr. Kondos testified that Young instructed him to move out of his home in order for the remediation to be performed.  Additionally, Health & Safety's mold assessment report states that "[t]he source of the mold should be remediated as soon as feasibly possible.  There should be an evacuation of the residence while remediation takes place."  Allstate attempted to find alternative housing for the Kondoses before the remediation repairs began, but due to the scarcity of appropriate housing in the area, those efforts failed.  Due to Allstate's inability to procure alternate living accommodations for his family, Mr. Kondos told Allstate that he would purchase a new home.  Mr. Kondos testified that he was told that if he bought a new home as a substitute for ALE, "Allstate will not pay you a penny."  Mr. Kondos further testified that he lived in a hotel for "[a] couple, three weeks" and "[he] feel[s] that Allstate owes me or owed me for the time I was out of the house . . . ."

The Kondoses argue that their ALE costs were a natural result of being required to vacate the home during the remediation process.  They assert that the reasonable amount of time required to repair the house was the eight to nine months it took Mr. Kondos to complete the remediation.  The Kondoses concede that "[c]ertainly, [we] could not be expected to perform the remediation by [our]selves in the same time frame that it could be performed by a crew of professional remediators."  They maintain, however, that despite it taking Mr. Kondos several months longer than a professional remediator, Allstate is not relieved of its obligation to pay for the ALE as

required by the Policy.  Accordingly, the Kondoses claim that they are entitled to reimbursement for the $32,000.00 in ALE they incurred.

In sum, there remain genuine issues of material fact regarding the amount Allstate was required to pay the Kondoses to satisfy their claims under the Policy.  The Kondoses have adduced evidence demonstrating a disparity between the contractors' bids for structural and contents remediation.  Additionally, the Kondoses have presented evidence that Allstate had knowledge of their opposition to Shane's involvement in the repairs.  Moreover, other than the cost to replace the carpet, the Kondoses have raised a fact question concerning Allstate's payment for buildback expenditures.  Finally, there is a dispute as to whether Allstate's ALE payment was in accordance with the Policy.  The express policy language, however, limits the Kondoses' reimbursement for ALE to $16,800.00, "20% of the Coverage A (Dwelling) limit of liability [$84,000.00]."  Hence, outstanding fact questions preclude summary judgment on the Kondoses' breach of contract claim. *See Sport Supply Group, Inc.*, 335 F.3d at 465.

> D.    Breach of the Duty of Good Faith and Fair Dealing

"Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of claims."  *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997) (citing *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)); *accord Medical Care Am., Inc. v. National Union Fire Ins. Co.*, 341 F.3d 415, 425 (5th Cir. 2003); *Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 70-71 (Tex. 1997); *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995).  "A cause of action for breach of the duty of good faith and fair dealing exists when the insurer has no reasonable basis for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining

whether there is any reasonable basis for denial." *Higginbotham*, 103 F.3d at 459 (citing *Arnold*, 725 S.W.2d at 167); *accord Medical Care Am., Inc.*, 341 F.3d at 425; *Universe Life Ins Co. v. Giles*, 950 S.W.2d 48, 50-51 (Tex. 1997) (quoting *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex. 1994)); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 283 (Tex. 1994). The key inquiry in a bad faith claim is the reasonableness of the insurer's conduct. *See Tucker v. State Farm Fire & Cas. Co.*, 981 F. Supp. 461, 465 (S.D. Tex. 1997) (citing *Giles*, 950 S.W.2d at 50-51); *see also Moriel*, 879 S.W.2d at 17-18; *Lyons v. Millers Cas. Co.*, 866 S.W.2d 597, 601 (Tex. 1993).

An insurer's liability under an insurance contract is separate and distinct from its liability for breach of the duty of good faith and fair dealing. *See Lyons*, 866 S.W.2d at 600; *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990). "A *bona fide* controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim." *Higginbotham*, 103 F.3d at 459; *see Medical Care Am., Inc.*, 341 F.3d at 425; *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 195-96 (Tex. 1998). "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith." *Higginbotham*, 103 F.3d at 459 (citing *Lyons*, 866 S.W.2d at 600); *see Castaneda*, 988 S.W.2d at 196.

To succeed on a claim of breach of the duty of good faith and fair dealing, the insured must prove (1) that the insurer either denied or delayed payment of the claim and (2) that the insurer "knew or should have known that it was reasonably clear that the claim was covered." *Giles*, 950 S.W.2d at 56; *see Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 880 (5th Cir. 2004); *Castaneda*, 988 S.W.2d at 195-96; *United States Fire Ins. Co. v. Williams*, 955 S.W.2d

267, 268 (Tex. 1997); *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997).  "'[A]n insurer breaches its duty of good faith and fair dealing by denying a claim when the insurer's liability has become reasonably clear.'"  *Medical Care Am., Inc.*, 341 F.3d at 425 (quoting *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998)); *see Williams*, 955 S.W.2d at 268; *Nicolau*, 951 S.W.2d at 448; *Giles*, 950 S.W.2d at 49.  "An insurer does not breach its duty of good faith and fair dealing by erroneously denying a claim."  *Hamburger*, 361 F.3d at 881; *see Tucker*, 981 F. Supp. at 465; *Williams*, 955 S.W.2d at 268; *Moriel*, 879 S.W.2d at 17.

The courts of Texas have repeatedly held that bad faith does not arise simply because the insurer's construction of the policy was subsequently found to be legally incorrect.  *See Williams*, 955 S.W.2d at 268 (citing *Giles*, 950 S.W.2d at 48); *Moriel*, 879 S.W.2d at 17.  Similarly, evidence that shows only a *bona fide* coverage dispute does not rise to the level of bad faith.  *See Hamburger*, 361 F.3d at 881; *Medical Care Am., Inc.*, 341 F.3d at 425; *Robinson v. State Farm Fire & Cas. Co.*, 13 F.3d 160, 162 (5th Cir. 1994); *Simmons*, 963 S.W.2d at 44; *Williams*, 955 S.W.2d at 268; *Nicolau*, 951 S.W.2d at 448; *Moriel*, 879 S.W.2d at 17.  "[I]nsurance carriers maintain the right to deny questionable claims without being subject to liability for an erroneous denial of the claim."  *Higginbotham*, 103 F.3d at 459 (citing *St. Paul Lloyd's Ins. Co. v. Fong Chun Huang*, 808 S.W.2d 524, 526 (Tex. App.—Houston [14th Dist.] 1991, writ denied)); *see Hamburger*, 361 F.3d at 881; *Robinson*, 13 F.3d at 162; *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1988).

Here, the plaintiffs allege that Allstate acted in bad faith by not investigating and paying their claims in a timely manner and by allegedly "forc[ing] Shane's bid on the Kondoses."  The

Kondoses assert that Allstate's purported failure to conduct an investigation and pay their claims on a timely basis was "egregious because they owed the insured the highest duty of good faith and fair dealing recognized by law."  Allstate counters that "[f]ollowing a timely investigation of the claims, Allstate made significant payments for remediation, buildback, contents remediation and ALE" in a good faith attempt to satisfy the Kondoses' claim.

One month after the Kondoses first reported their claim, Allstate retained Health & Safety to inspect the residence and prepare a mold remediation assessment report.  When the Kondoses complained of the thoroughness of the report, Allstate hired Health & Safety to conduct an additional inspection of the alleged damage to their residence.  After Health & Safety issued its reports, Allstate provided the Kondoses with the names of several construction contractors to contact to facilitate the remediation process.  Ultimately, Allstate selected Shane's as the remediator and paid the Kondoses accordingly.  Additionally, Allstate attempted to procure alternative living arrangements for the Kondoses while their home was being repaired.  Ultimately, Allstate paid the Kondoses $27,777.92 in an attempt to satisfy their homeowner's insurance claim.

In this instance, although Allstate seemingly undertook the appropriate steps in adjusting the Kondoses' claim, a *bona fide* dispute exists between the parties concerning the extent of Allstate's liability with regard to the amount of reimbursement owed and the timing of the payments that were made.  In view of the nature of the incident and the facts that were before the insurer, Allstate's investigation appears to have been adequate and reasonable and its position regarding further payments to be the result of a legitimate controversy on which reasonable minds could differ.  *See Simmons*, 963 S.W.2d at 44-45.  Under these circumstances, the plaintiffs have failed to adduce competent summary judgment evidence from which it could be inferred that

Allstate acted in bad faith in adjusting their claim.  Furthermore, in light of certified questions

currently pending before the Texas Supreme Court, an insurer's liability for certain mold-related

damages has not yet become reasonably clear.  *See Fiess v. State Farm Lloyds*, 392 F.3d 802, 811

(5th Cir. 2004) (certifying question to Texas Supreme Court addressing insurer liability relating

to ensuing losses with respect to mold damage).  Therefore, the Kondoses' extra-contractual claim

for breach of the duty of good faith and fair dealing is foreclosed.

     E.     <u>Violations of the Texas Deceptive Trade Practices Act and the Texas Insurance Code</u>

     The Kondoses also assert in their complaint that Allstate violated § 17.46 of the DTPA and

Articles 21.21 and 21.55 of the Texas Insurance Code, as well as the duty of good faith and fair

dealing, by failing to pay the entirety of their claims.

     1.     <u>Article 21.21 and Section 17.46</u>

     In Texas, an individual who has been damaged by "unfair methods of competition or unfair

or deceptive acts or practices in the business of insurance" may bring a statutory cause of action

under the Texas Insurance Code against the "person or persons engaging in such acts or

practices."  TEX. INS. CODE ANN. art. 21.21, § 16; *see Transitional Hosp. Corp. v. Blue Cross

& Blue Shield of Tex., Inc.*, 164 F.3d 952, 955 (5th Cir. 1999); *Storebrand Ins. Co. U.K., Ltd.

v. Employers Ins. of Wausau*, 139 F.3d 1052, 1055 (5th Cir. 1998); *Higginbotham*, 103 F.3d at

460; *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 382-83 (Tex. 2000).  A violation of the duty

of good faith and fair dealing also constitutes an unfair insurance practice in violation of Article

21.21 of the Insurance Code.  *See Performance Autoplex II Ltd.*, 322 F.3d at 860-61; *Tucker*, 981

F. Supp. at 465; *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 136 (Tex. 1988).

"The prohibited conduct includes 'failing to attempt in good faith to effectuate a prompt, fair, and

equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear.'" *Performance Autoplex II Ltd.*, 322 F.3d at 860-61 (quoting TEX. INS. CODE ANN. art. 21.21, § 4(10)(a)(ii)).  In addition, "the use or employment by any person of an act or practice in violation of Article 21.21, Insurance Code" is a violation of the DTPA.  TEX. BUS. & COM. CODE ANN. § 17.50(a); *see Thrash v. State Farm Fire & Cas. Co.*, 992 F.2d 1354, 1357-58 & n.19 (5th Cir. 1993); *Tucker*, 981 F. Supp. at 465; *Vail*, 754 S.W.2d at 136.

"The Texas Insurance Code and the Deceptive Trade Practices Act are in large measure statutory fleshings-out of the already existing common law requirements." *Robinson*, 13 F.3d at 162.  Hence, the breach of an insurance contract does not automatically give rise to liability under the Insurance Code or the DTPA.  *See Walker v. Federal Kemper Life Assurance Co.*, 828 S.W.2d 442, 454 (Tex. App.—San Antonio 1992, writ denied) (citing *South Tex. Nat'l Bank v. U.S. Fire Ins. Co.*, 640 F. Supp. 278, 280 (S.D. Tex. 1985)).  Rather, the "reasonableness" requirements of common law good faith apply equally in the statutory context.  *See Giles*, 950 S.W.2d at 55.  Under Texas law, "extra-contractual tort claims" pursuant to the Texas Insurance Code and the DTPA "require the same predicate for recovery as bad faith causes of action." *Higginbotham*, 103 F.3d at 460 (citing *Emmert v. Progressive County Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App.—Tyler 1994, writ denied)); *accord Douglas v. State Farm Lloyds*, 37 F. Supp. 2d 532, 544 (S.D. Tex. 1999).  Thus, in order to establish a statutory violation under the Insurance Code or the DTPA, the elements necessary to demonstrate an insurer's breach of the common law duty of good faith and fair dealing must be proven.  *See Higginbotham*, 103 F.3d at 460; *Lockett v. Prudential Ins. Co.*, 870 F. Supp. 735, 741 (W.D. Tex. 1994) (citing *Vail*, 754 S.W.2d at 135; *Koral Indus., Inc. v. Security-Connecticut Life Ins. Co.*, 788 S.W.2d 136, 147 (Tex.

App.—Dallas), *writ denied*, 802 S.W.2d 650 (Tex. 1990)); *MacIntire*, 27 S.W.3d at 92.  A statutory violation is dependent upon a "'determination pursuant to law that the insurer breached the duty of good faith and fair dealing.'"  *Lockett*, 870 F. Supp. at 741 (quoting *Koral Indus., Inc.*, 788 S.W.2d at 148); *see Higginbotham*, 103 F.3d at 460; *see also Charter Roofing Co. v. Tri-State Ins. Co.*, 841 S.W.2d 903, 906 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

Therefore, when an insured joins claims under the Texas Insurance Code and the DTPA with a bad faith claim asserting a wrongful denial or delay in the payment of policy benefits, if there is no merit to the bad faith claim, there can be no liability on the statutory claims.  *See Higginbotham*, 103 F.3d at 460; *Beaumont Rice Mill, Inc. v. Mid-American Indem. Ins. Co.*, 948 F.2d 950, 952 (5th Cir. 1991); *Tucker*, 981 F. Supp. at 465; *State Farm Fire & Cas. Co. v. Woods*, 925 F. Supp. 1174, 1180 (E.D. Tex. 1996), *aff'd*, 129 F.3d 607 (5th Cir. 1997); *Lockett*, 870 F. Supp. at 741; *Stoker*, 903 S.W.2d at 341; *MacIntire*, 27 S.W.3d at 92.  Concerning the interrelationship between bad faith and statutory claims, the court in *Tucker* commented, "Plaintiff's extra-contractual claims live or die depending on whether Plaintiff's bad-faith claim has any viability."  981 F. Supp. at 465.  Consequently, because the common law bad faith claims asserted by the Kondoses in the instant case are not viable, summary judgment is also proper as to their statutory claims under Article 21.21 of the Texas Insurance Code and § 17.46 of the DTPA.

2.    Article 21.55

Article 21.55 of the Texas Insurance Code "requires the prompt payment or resolution of claims according to a defined timetable."  *DeLeon v. Lloyd's London, Certain Underwriters*, 259 F.3d 344, 354 (5th Cir. 2001); *see Performance Autoplex II Ltd.*, 322 F.3d at 860-61.  The United

States Court of Appeals for the Fifth Circuit has recognized that "'[t]he purpose of the statutory deadline contained in Article 21.55 is to guarantee the prompt payment of claims made pursuant to policies of insurance; not to create a statutory windfall for one party or the other.'" *DeLeon*, 259 F.3d at 354 (quoting *Daugherty v. American Motorists Ins. Co.*, 974 S.W.2d 796, 798 (Tex. App.—Houston [14th Dist.] 1998, no pet.)).  The statute sets forth a number of steps that must be taken by insurers when considering a policyholder's claim.  *See* TEX. INS. CODE ANN. art. 21.55 §§ 2-5.

Pursuant to Article 21.55, not later than the fifteenth day after receipt of notice of a claim, the insurer must acknowledge receipt of the claim, commence an investigation of the claim, and request from the claimant all items, statements, and forms that the insurer reasonably believes at that time will be required from the claimant.  *See id.* at § 2(a).  The insurer then must notify the claimant in writing of the acceptance or rejection of the claim not later than the fifteenth business day after the date the insurer receives all items, statements, and forms required by the insurer, in order to secure final proof of loss.  *See id.* at § 3(a).  If the insurer rejects the claim, the notice must state the reasons for the rejection.  *See id.* at § 3(c).  Under Article 21.55, § 3(f):

> Except as otherwise provided, if an insurer delays payment of a claim following its receipt of all items, statements, and forms reasonably requested and required, as provided under Section 2 of this article, for a period exceeding the period specified in other applicable statutes or, in the absence of any other specified period, for more than 60 days, the insurer shall pay damages and other items as provided for in Section 6 of this article.

*Id.* at § 3(f).

Under Section 6 of the statute, if an insurer fails to comply with the requirements of Article 21.55, penalty interest at 18% per annum is recoverable as damages, plus reasonable attorney's fees.  *See Wellisch v. United Servs. Auto. Ass'n*, 75 S.W.3d 53, 57 (Tex. App.—San Antonio

24

2002, pet. denied); *Dunn v. Southern Farm Bureau Cas. Ins. Co.*, 991 S.W.2d 467, 471 (Tex.

App.—Tyler 1999, pet. denied) (citing *Mid-Century Ins. Co. v. Barclay*, 880 S.W.2d 807, 811-12

(Tex. App.—Austin 1994, writ denied)).   Section 6 of Article 21.55 provides:

> In all cases where a claim is made pursuant to a policy of insurance and the insurer liable therefor is not in compliance with the requirements of this article, such insurer shall be liable to pay the holder of the policy, or the beneficiary making a claim under the policy, in addition to the amount of the claim, 18 percent per annum of the amount of such claim as damages, together with reasonable attorney fees.  If suit is filed, such attorney fees shall be taxed as part of the costs in the case.

TEX. INS. CODE ANN. art. 21.55, § 6.

To prevail under Article 21.55, the insured must establish:  "(1) a claim under an insurance

policy (2) for which the insurer is liable and (3) that the insurer has not followed one or more

sections of Article 21.55 with respect to the claim." *Wellisch*, 75 S.W.3d at 57 n.2 (citing *Allstate*

*Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex. 2001), *modified on other grounds*, 2001 WL

1412951, at *1 (Tex. June 21, 2001)).   "The sole basis for finding liability under Article 21.55,

then, is that the requisite time has passed and the insurer was ultimately found liable for the

claim." *Performance Autoplex II Ltd.*, 322 F.3d at 861.   "A wrongful rejection of a claim may

be considered a delay in payment for purposes of the 60-day rule and statutory damages.  More

specifically, if an insurer fails to pay a claim, it runs the risk of incurring this 18 percent statutory

fee and reasonable attorneys' fees." *Higginbotham*, 103 F.3d at 461; *accord E & R Rubalcava*

*Constr., Inc. v. Burlington Ins. Co.*, 148 F. Supp. 2d 746, 750 (N.D. Tex. 2001); *Teate v. Mutual*

*Life Ins. Co.*, 965 F. Supp. 891, 893 (E.D. Tex. 1997); *Cater v. United Servs. Auto. Ass'n*, 27

S.W.3d 81, 84 (Tex. App.—San Antonio 2000, pet. denied); *Oram v. State Farm Lloyds*, 977

S.W.2d 163, 167 (Tex. App.—Austin 1998, no pet.).

25

Article 21.55 must be liberally construed to promote its underlying purpose, which is to obtain prompt payment of claims made pursuant to policies of insurance. *See* TEX. INS. CODE ANN. art. 21.55, § 8; *Wellisch*, 75 S.W.3d at 57; *Northwestern Nat'l County Mut. Ins. Co. v. Rodriguez*, 18 S.W.3d 718, 721 (Tex. App.—San Antonio 2000, pet. denied); *Dunn*, 991 S.W.2d at 473. Hence, an insurance company's good faith assertion of a defense does not relieve the insurer of liability for penalties for tardy payment, as long as the insurer is finally adjudged liable. *Higginbotham*, 103 F.3d at 461 (citing *Key Life Ins. Co. of S.C. v. Davis*, 509 S.W.2d 403, 405 (Tex. Civ. App.—Beaumont 1974, no writ) (interpreting statutory predecessor to Article 21.55)); *accord Performance Autoplex II Ltd.*, 322 F.3d at 861; *Cater*, 27 S.W.3d at 84. "There is no good faith exception within the statute's plain language." *Id.* Thus, Article 21.55 "provides for statutory damages for failure to pay an insurance claim within a specified time if an insurer is found liable under a policy, even if the insurer had a reasonable basis for denying coverage." *Performance Autoplex II Ltd.*, 322 F.3d at 861; *see St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1255 (5th Cir.1998) (the "penalty applies automatically if the claim is not paid within the period allowed").

In light of the fact issues surrounding the extent of Allstate's liability on the Kondoses' breach of contract claim, it remains unclear whether Allstate made full and timely payments to the Kondoses in accordance with the terms of the Policy. Therefore, summary judgment is not warranted with respect to the Kondoses' claim under Article 21.55 of the Texas Insurance Code.

F.    Attorneys' Fees

Allstate maintains that the Kondoses are not entitled to attorneys' fees because they cannot prevail on their breach of contract claim, they have provided no evidence of the reasonableness

26

of any such fees, and they have not provided a written expert report in accordance with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.

In federal court in the Fifth Circuit, an attorneys' fee award "is governed by the same law that serves as the rule of decision for the substantive issues in the case." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) (citing *Kona Tech. Corp. v. Southern Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000)). While previously unclear whether state or federal law governed the review of an award's reasonableness, in *Mathis*, the Fifth Circuit made explicit that "[s]tate law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis*, 302 F.3d at 461 (citing *Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 258 F.3d 345, 353-54 (5th Cir. 2001)); *accord DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 436 (5th Cir. 2003).

In Texas, attorneys' fees are recoverable when provided by statute or by contract between the parties. *See Bank One, Tex., N.A. v. Taylor*, 970 F.2d 16, 35 (5th Cir. 1992), *cert. denied*, 508 U.S. 906 (1993); *Richter v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 939 F.2d 1176, 1195 (5th Cir. 1991); *Texas Commerce Bank Nat'l Ass'n v. Capital Bancshares, Inc.*, 907 F.2d 1571, 1575 (5th Cir. 1990); *Schlobohm v. Pepperidge Farm, Inc.*, 806 F.2d 578, 583 (5th Cir. 1986); *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex. 1999). "The authorization of attorney's fees in civil cases may not be inferred; rather it 'must be provided for by the express terms of the statute in question.'" *Travelers Indem. Co. v. Mayfield*, 923 S.W.2d 590, 593 (Tex. 1996) (quoting *First City Bank v. Guex*, 677 S.W.2d 25, 30 (Tex. 1984)); *see Holland*, 1 S.W.3d at 95; *Knebel v. Capital Nat'l Bank*, 518 S.W.2d 795, 803 (Tex. 1974). Attorneys' fees are available by statute for certain type of claims, including breach of contract. "Under Texas law, when a prevailing

party in a breach of contract suit seeks fees, an award of reasonable fees is mandatory, as long as there is proof of reasonable fees . . . . and the plaintiff has been awarded damages." *Mathis*, 302 F.3d at 462 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8)); *see Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 866 (5th Cir. 2004); *DP Solutions, Inc.*, 353 F.3d at 436; *Kona Tech. Corp.*, 225 F.3d at 614.   "There is, however, discretion to determine the amount of the fee." *Mathis*, 302 F.3d at 462.

In the case at bar, if the Kondoses ultimately prevail on their breach of contract claim against Allstate, they are authorized by statute to an award of necessary and reasonable attorneys' fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (providing that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . (8) an oral or written contract").   Additionally, if they succeed on their breach of contract claim, Section 6 of Article 21.55 of the Texas Insurance Code entitles the Kondoses to recover reasonable attorneys' fees. *See* TEX. INS. CODE ANN. art. 21.55 § 6; *Wellisch*, 75 S.W.3d at 57.

"Attorney's fees, where recoverable, must be 'reasonable' under the particular circumstances of the case and must bear some reasonable relationship to the amount in controversy." *Houston Lighting & Power Co. v. Russo Properties, Inc.*, 710 S.W.2d 711, 715 (Tex. App.—Houston [1st Dist.] 1986, no writ); *see Northwinds Abatement, Inc.*, 258 F.3d at 354; *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir. 2001); *see also Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991).   To determine the reasonableness of attorneys' fees sought, the trier of fact may consider the following factors:

(1)   the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

28

(2)   the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)   the fee customarily charged in the locality for similar legal services;

(4)   the amount involved and the results obtained;

(5)   the time limitations imposed by the client or by the circumstances;

(6)   the nature and length of the professional relationship with the client;

(7)   the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8)   whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Fluorine On Call, Ltd.*, 380 F.3d at 867 (listing the factors the Texas Supreme Court utilizes to determine the reasonableness of attorney's fees); *American Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 491 n.9 (5th Cir. 2004) (employing these factors when assessing the reasonableness of attorney's fees in breach of contract action); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (applying these factors to a claim under the DTPA).

The reasonableness of attorneys' fees is a question of fact that must be supported by competent evidence.  *See C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 802 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co.*, 3 S.W.3d 112, 132 (Tex. App.—Corpus Christi 1999, pet. denied); *Stamp-Ad, Inc. v. Barton Raben, Inc.*, 915 S.W.2d 932, 937 (Tex. App.—Houston [1st Dist.] 1996, no writ); *Matthiessen v. Schaeffer*, 897 S.W.2d 825, 827 (Tex. App.—San Antonio 1994), *rev'd on other grounds*, 915 S.W.2d 479 (Tex. 1995).  "To show the reasonableness and necessity of attorney's fees incurred, Texas courts have generally held that a party seeking such fees must offer testimony of a witness

29

who has been designated as an expert." *American Home Assurance Co.*, 378 F.3d at 490. Nevertheless, "[e]xpert testimony concerning the reasonableness of attorney's fees is not conclusive and the trial court is not bound by such testimony." *Matthiessen*, 897 S.W.2d at 827; *see Mack v. Moore*, 669 S.W.2d 415, 419-20 (Tex. App.—Houston [1st Dist.] 1984, writ denied).

In addition, "[t]here is a rebuttable presumption of reasonableness for fees that are 'usual and customary.'" *Mathis*, 302 F.3d at 462 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 38.003)). Moreover, the court is permitted to take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence in: "(1) a proceeding before the court; or (2) a jury case in which the amount of attorney's fees is submitted to the court by agreement." TEX. CIV. PRAC. & REM. CODE ANN. § 38.004; *see also Fluorine On Call, Ltd.*, 380 F.3d at 866-67; *American Home Assurance Co.*, 378 F.3d at 490; *Mathis*, 302 F.3d at 462; *AU Pharm., Inc. v. Boston*, 986 S.W.2d 331, 339 (Tex. App.—Texarkana 1999, no pet.); *Allstate Ins. Co. v. Lincoln*, 976 S.W.2d 873, 877 (Tex. App.—Waco 1998, no pet.). Furthermore, the judge can draw on his or her own expertise in this area. *See Tensor Inc.*, 135 S.W.3d at 802; *Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.*, 48 S.W.3d 225, 241 (Tex. App.—San Antonio 2001, pet. denied); *Matthiessen*, 897 S.W.2d at 827.

With regard to expert witnesses, Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure provides that "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." FED. R. CIV. P. 26(a)(2)(A); *see Hamburger*, 361 F.3d at 882. A party must also provide a written report "with respect to a witness who is retained or specially employed to provide expert testimony in the case." FED. R. CIV. P. 26(a)(2)(B); *see Lowery v. Spa Crafters, Inc.*, No. Civ. A.

SA03CA0073-XR, 2004 WL 1824380, at *1 (W.D. Tex. Aug. 16, 2004).  Generally, however, attorneys testifying solely on the topic of attorneys' fees are not required to provide expert reports. *See McCulloch v. Hartford Life & Accident Ins. Co.*, 223 F.R.D. 26, 29 (D. Conn. 2004) (citing *Wright v. Blythe-Nelson*, No. CIVA399CV2522D, 2001 WL 804529, at *6 (N.D. Tex. July 10, 2001)).  Nonetheless, any person who has been identified as an expert may be deposed by the opposing party.  *See* FED. R. CIV. P. 26(b)(4)(A); *Hamburger*, 361 F.3d at 882 n.4.

In the case at bar, the court's amended scheduling order requires the Kondoses to designate their expert witnesses by September 1, 2004.  On that day, the plaintiffs designated Robert D. Clements, Jr. ("Clements"), or a representative from the Law Office of Robert D. Clements, Jr., as a testifying expert on attorneys' fees.  The expert designation, to which a copy of Clements's curriculum vitae is attached, states that Clements "[w]ill testify as to reasonable and necessary attorney[s'] fees in this case."  Clements is one of the attorneys who represents the Kondoses in this litigation.  Thus, an expert report is not required in this situation, as Clements is not an expert who was "retained or specially employed to provide expert testimony" in the Kondoses' case against Allstate.  *See* FED. R. CIV. P. 26(a)(2)(B); *see also McCulloch*, 223 F.R.D. at 29; *Wright*, 2001 WL 804529, at *6.  Rather, Clements was retained, along with the rest of his firm, to provide legal representation to the Kondoses.

Moreover, Allstate had adequate notice of the Kondoses' intent to call Clements as a testifying expert on attorneys' fees in this case, and the subject matter of his testimony was clearly stated on the designation.  When Clements was designated as an expert, the exact amount of attorneys' fees could not be ascertained because, as this case proceeds to trial, the attorneys' fees continue to accrue.  In any event, Allstate had the opportunity to depose Clements on the issue of

31

attorneys' fees during the applicable discovery period, but it chose not to do so.  *See* Fed R. Civ. P. 26(b)(4)(A); *Lowery*, 2004 WL 1824380, at *3.  Hence, the Kondoses have, up to this point, satisfied the requirements of Rule 26, and Allstate cannot claim surprise or prejudice with regard to Clements's testifying as an expert witness in this case.  *See Lowery*, 2004 WL 1824380, at *3. Nevertheless, at trial, in order to substantiate their claim for attorneys' fees, the Kondoses will be required to supply written documentation reflecting the time expended, the rates charged, and the nature of the work performed by the attorneys representing them.  *See DP Solutions, Inc.*, 353 F.3d at 433 & n.7; *Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir.), *cert. denied*, 537 U.S. 883 (2002); *see also* 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2675.1 (3d ed. 2005).  Under these circumstances, if they prevail on their breach of contract claim, the Kondoses are not precluded from recovering necessary and reasonable attorneys' fees based on Clements's testimony at trial on this subject.

III.   <u>Conclusion</u>

Accordingly, Allstate's Motion for Summary Judgment is granted in part and denied in part.  There remain no material facts in dispute on the Kondoses' claims for breach of the duty of good faith and fair dealing, violation of § 17.46 of the DTPA, violation of Article 21.21 of the Texas Insurance Code, negligence, gross negligence, or fraud.  Therefore, Allstate is entitled to judgment as a matter of law on these claims.  There exist, however, outstanding issues of material fact with respect to the Kondoses' claims for breach of contract, violation of Article 21.55 of the Texas Insurance Code, and attorneys' fees.  The Kondoses, therefore, may proceed to trial on these claims against Allstate.

SIGNED at Beaumont, Texas, this 22nd day of April, 2005.

_____

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**       **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| GEORGE KONDOS and | § | |
| RUBY ANN KONDOS, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:03-CV-1440 |
| | § | |
| ALLSTATE TEXAS LLOYDS and | § | |
| ROBERT SOLBERG, | § | |
| | § | |
| Defendants. | § | |

## PARTIAL SUMMARY JUDGMENT

In accordance with the court's Memorandum and Order signed April 22, 2005, the court renders partial summary judgment in favor of Defendants Allstate Texas Lloyds and Robert Solberg on the Kondoses' claims for breach of the duty of good faith and fair dealing, violation of § 17.46 of the DTPA, violation of Article 21.21 of the Texas Insurance Code, negligence, gross negligence, and fraud.

SIGNED at Beaumont, Texas, this 22nd day of April, 2005.


_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE